Good afternoon, Your Honors. May it please the Court, Bobby Birchfield for Meritor and the Appellants, I would like to reserve five minutes for rebuttal. Since this Court decided the case initially in 2008 under the Yardman Principles, the unanimous United States Supreme Court has repudiated those standards in the Tackett decision. The contract language here, construed as required by Tackett and by this Court's decision in Gallo, precludes vesting as a matter of law and mandates reversal and entry of judgment for Appellants. The Gallo decision governs this case for at least four reasons. First, as in Gallo, there is no language that indicates the benefits are vested. In Gallo, that was the first and foremost reason that the Court rejected vesting. Second, as in Gallo, because these benefits are not excluded from the general durational clause, the benefits are subject to that clause and therefore not vested. Third, as in Gallo, the parties here specifically wrote, and this is at Appendix 2860, specifically under the plan for the lifetime of a retiree or separated employee. The agreements contain no comparable lifetime language for retiree health benefits, and that was another decisive factor in Gallo. Finally, as in Gallo, the benefits were subject to change in later agreements. The 1997 insurance plan moved both future and existing retirees into a preferred provider organization, PPO, a managed care plan. The 2000 insurance document, and this is at Appendix 2963, repeated that agreement. Effective 9-1-98, the indemnity plan is replaced with a PPO plan. Not only future retirees, but existing retirees were moved from an indemnity plan into the managed care plan. Changing a plan isn't the same as discontinuing it. Your Honor, vesting, under the definition of vesting that this Court set down in the Yolton decision, retirees who have vested benefits receive those benefits under the plan under which they retire. So if the company and the union agree to change those benefits, down the road in another agreement, as happened here, that's inconsistent with the notion of vesting. This Court's two Reese v. C&H decisions, and those decisions are at 574 F. 3rd, 315. Yardman came up with a presumption and basically said, we're not going to look at the terms of the contract. We're going to engage in a presumption. And Tackett said, that's not right. You look at the contract. And we know from contract law that if something's ambiguous, you can look at extrinsic evidence. So why shouldn't this just all, just like in Tackett, go back to the District Court to reevaluate the case without the Yardman presumption? Two reasons, Your Honor. Number one, in Tackett, there had been a bench trial with the receipt of evidence and with the findings of fact, which were subject to a clearly erroneous standard. The Tackett remand pointed out that those findings of fact were made in the shadow of Yardman. It was difficult to tell what weight to give them in light of that. Secondly, the more recent decision in Gallo was exactly like this case. It came up on a summary judgment, as a summary judgment case, and the court looked at the terms of the contract, given the canons of construction set forth in Tackett, and determined that the contract was not ambiguous. This contract, first of all, it says, and payable thereafter, which you don't have. And then it also has a provision that explicitly links, at least for survivors, explicitly says, I think, that the survivors get this health care benefit for as long as they get their survivor benefits. May I respond to both of those, Your Honor? The language used here is, shall be continued thereafter. The Supreme Court addressed material identical language in Tackett in addressing the policy versus Powell pressed steel case, say that ten times quickly, which used language will continue to provide. And the court held that that language did not create vesting. Gallo addressed similar language, continued language, and it said that it guarantees benefits until some point in the future, but it doesn't tell you what point that is. You get that point from the duration clause. As for the linkage between, as for the linkage between retiree, between spousal benefits and retiree health care benefits, Your Honor, let me take you to the contract. This is, this is at Appendix, this is at Appendix 2969, Article 3, Section 6B1 of the contract deals with, and I actually have copies of the 2000 contract, I know there's a date record here, which I'm happy to share if you would like them. Yes, no? Yes, go ahead. Your Honor, that language says in Paragraph 6B, it says, the company shall make suitable arrangements for a surviving spouse of a retired employee if she's receiving health care benefits or eligible to receive a survivor benefit. But how much does the company pay? That's determined by Article 1, Section 3B, which is on page 2921, and that is in Section, Article 1, Section 3B7, 2, 7-1, I'm sorry, it says the company shall make monthly contributions for the following month's health care coverage on behalf of a surviving spouse as defined in Article 3, Section 6B1, 2, 3, and 4, but neither of those clauses has a duration in it. And as Gallo instructs, if there's no duration clause, the general duration clause applies, and that's the three years here, the contract terminated in 2003. What is the significance of that, of Exhibit C, when it says, when either retiree or spouse reaches 80, any premium amount payable by both is frozen? I mean, that obviously has to go beyond the three-year contract. Your Honor, I don't think so, because there are retirees turning 80 in this class all the time. Some of them turned 80 during the duration of the 2000 contract. And for those retirees, the benefits for whom, like the others, were subject to that duration clause, their benefits were frozen when they got to 80 during the term of that contract. There's nothing in that specification of what their benefits are at a particular age that says they're going to get the benefits forever thereafter. That's not in this agreement. Well, let me ask you this. I see there's a lot of extrinsic evidence that assured the retirees of lifetime benefits. Now, why isn't Meritor bound by all that? Well, Your Honor, first of all, there's an integration clause in these collective bargaining agreements that says that they constitute, that they supersede all prior written and sole agreement between the parties. Second, both Tackett and Gallo have emphasized that you only turn to the extrinsic evidence if, after looking at the language of the contracts and applying the canons of Tackett, the contracts are ambiguous. We submit that's not the case here. I mean, well, why isn't the contract ambiguous? Particularly the language, quote, shall be continued thereafter. What makes that less than ambiguous? Your Honor, the Supreme Court specifically addressed that language in the Tackett decision. It addressed policy versus Powell pressed steel, which used material identical language to that, shall be continued, and it ruled that that did not create vesting. That was the ruling of the Supreme Court. Then the Gallo court said that that language continued to some point in the future but did not say what that point is. In order to determine that point in the future, you have to look to the general duration clause. But there's a difference between saying there's an ambiguity and saying that there's unequivocal vesting. I mean, Tackett did not enter judgment as a matter of law for the company. That's correct, Your Honor. It did not. And I'm not really in a position to explain why the Supreme Court remanded it. Because it's a contract case, and there are no special rules anymore. You don't say, if you have this clause, you automatically aren't vested, or if you have that clause, you're automatically vested. It's like any other contract case. And Your Honor, it's on point with the Gallo case, which came up in the same procedural posture as this case, which involved a contract that used many of the same words, and which the court found the contract was unambiguous and supported a ruling as a matter of law that there was no vesting and entered judgment in favor of the employer, which is what Meritor  May it please the Court. Stuart Israel on behalf of the plaintiffs. Pardon me, I've got a sore throat. I hope I won't be sniffing into the microphone like in the debates, but I will struggle with it. The first thing I would like to do is correct Mr. Birchfield about the caps. The 2000 Collective Bargaining Agreement does indeed contain a negotiated for example that says that those who retire after October 2001, specifically in the example, in 2003, the last year of the last contract, are unlikely to be affected by the cap split of future increases for seven years, that this 55-year-old 2003 retiree will have his cap reduced when he turns 65 and becomes Medicare eligible, which is 10 years after the 2003 contract expires, and that his cap will be frozen when he turns 80, which is 25 years later in 2028. That is a negotiated agreement between the parties and it provides a specific example of how the caps work and that alone demonstrates what Tackett calls the party's intentions that benefits carry on past expiration of the agreement. That's the last agreement, the last plant, which continued the 1968 language and then punctuated it with the caps that extend past 2028. Is there anything like that in Gallo? No. My view is that there is no reason for the court to alter the result in this court below or in the district court, which wrote two extensive decisions. But we have to alter our reasoning. Well, I submit that Tackett does not change anything, that you can remove Tackett. You can certainly say that there no longer is an inference, as the Supreme Court held, and perhaps you must say that. But beyond that, nothing was overlooked or misapprehended by the court. The record is clear. The record is overwhelming and almost undisputed in every material respect. Tackett says there will be no presumptions for or against vesting. Tackett says the ordinary principles of contract law prevail. Tackett says ultimately the party's right to vote must be considered in 1968. Tackett also says that federal labor policy must be considered. And federal labor policy, at least since the Steelworkers Trilogy in 1960, recognizes that collective bargaining agreements entail, that assessment of them, entails a broader look at the context. Tackett says that as long as there's record evidence, that the court can consider context, course of performance, course of dealing, and that sort of thing. And that's not dependent on ambiguity. That is in the first instance. That is what Gallo versus Moen calls taking a look in the first instance at the four corners of the contract. And what we have here in the four corners of the contract, in language negotiated in 1968. You're saying that extrinsic context is in the four corners? I'm saying that the initial, the court's initial assessment of the contract itself may consider industry practice and course of conduct supported by record evidence even when there is no ambiguity. Tackett says this and incites treatise that say this. And Tackett 3, this court's post-Supreme Court decision, says the same thing. And how would that be evident within the four corners? Well, it's industry practice. And I don't want to rely on that. I'd like to, if Your Honor, look at what is within the four corners. What is within the four corners is a section that is entitled, Continuance of Health Care. When does it start? Upon retirement or upon termination at age 65 or older. Wait, are you talking about Section 6? Yes. That was negotiated in 1968. It was continued in 12 collective bargaining agreements after that and it gives you the start date. Upon retirement or termination at 65. Why 65? Because in 1966 Medicare became effective and retiree insurance became cheap. And that is the context that this collective bargaining agreement can be assessed in light of. The history, and it's not just the history of this company, it is the history of this company, but it's also the history of other auto supplier companies as reflected in decisions of this court and other courts cited in our brief. So it begins upon retirement or termination at 65 and it shall be continued thereafter. And I say that as durational language. And to the extent that there's tension between that and the general duration clause, then you go beyond the four corners of the contract. And the last time we were in this court arguing this case, it was the position of the company that there was tension between shall be continued thereafter and continuance on the one hand and the general duration clause on the other hand. In fact, the pension agreement, which Mr. Birchfield cites, also expires after three years. And nobody's arguing that pension is not a lifetime benefit. But the punctuation in the last contract, and several contracts earlier than that, were these caps where the parties are negotiating to save the company some money by splitting future increases for post-2001 retirees between the retiree and the company, but they moderate it. They tell the retiree it's going to be based on a benchmark. And 2003 retiree, you're not going to hit that benchmark, we think, for seven years. Okay, so what's your position on his argument that if it was vested, they never could have changed it? We acknowledged, as we acknowledged in the district court and in this court previously, that there were moderate changes, not material changes. There were structural changes. In fact, there was an evidentiary, there was no trial in this case, but there was an evidentiary hearing where both sides presented witnesses under oath who testified. And one of the union negotiators testified that he agreed to a modest change, a modest increase in the prescription drugs, and he was mistaken. And he was later advised by the lawyers after this case was filed when they threatened to cancel the insurance for 2,900 retirees that he shouldn't have done that. But back to what Tackett says, the party's intentions control. And it's not angels dancing on the head of the pen. That's not the prism for deciding the party's intention. What is the prism is what the party said, continuance with the start date shall be continued thereafter with no end date in the context of a collective bargaining agreement that sets limits, durational limits on other things. But at the very least, this is ambiguous. How do you get around Gallo? First of all, I would say that Gallo is immaterial to this. Gallo says what I'm saying. Gallo says that Tackett is the law. Gallo says that you look at the contract language, that there are no magic words, that the Supreme Court says the party's intentions control, that with record evidence you can look beyond the four corners. Okay, so how is this case different from Gallo? The language is different. The history is different. In what respect? Well, did Gallo look at the history? Gallo declined to look at the history because it said the contract unambiguously did not promise health care beyond expiration. What's the difference between this contract and Gallo? The difference is the continuance language, the shall be continued thereafter language, the caps language, demonstrating the party's intentions that in 2000, when they negotiated a contract expiring at the last plant in 2003, that there were going to be benchmarks reached seven, ten, and twenty-five years into the future, and that for a retiree who retired in October 2001, that retiree's responsibility for contributions toward health care would be frozen so that when he turns 81 and older, he's not going to have any additional. There's nothing like any of those. So you're referring to Exhibit C? Yes. Okay. And then, go ahead. I have a question, Mr. Israel. I'm reading from page 271 of Gallo. It says, if Tackett tells us anything, however, it is that the use of the future tense without more, without words committing to retain the benefit for life, does not guarantee lifetime benefits. Now, that seems to me applicable here, doesn't it? I'm sorry, I didn't hear the last thing you said, Judge Gilman. I'm looking at the screen instead of the camera, I'm sorry. Okay. Now, you're saying Gallo has no effect on this case, and I'm asking, well, what about that language from Gallo? Yes. I believe that Gallo has its own flaws, as are pointed out by the dissent and in the cert petition. But at bottom, Gallo is applying Tackett to a specific contract in specific circumstances, which are materially different here. I submit that at the very least, continuance shall be continued thereafter, and CAPS creates a lack of clarity in whether you call it extrinsic evidence or course of conduct or course of dealing or Federal Rules of Evidence 801D2 admissions. The parties have a history of performing under these contracts from 1968 that span five decades, and the parties' conduct by word and deed reflects their intentions. And I believe if the court will go back to Tackett, and in particular, the summary of Tackett in Tackett III, the court will see that these are ordinary contract principles, that it dates back to the 19th century and early cases in the Supreme Court in the 20th century, that says you look at what parties do under collective bargaining agreements and contracts before they have a fight about them, and that tells you what they meant. I have another question. I want to ask you, there's a duration clause in the insurance program itself, right? There's a general duration clause in the collective bargaining agreement, which incorporates the pension agreement and the insurance agreement, and each of those agreements, the pension and the insurance, has a three-year duration clause. And of course, virtually every collective bargaining agreement that ever was that promised post-expiration benefits was a limited duration contract. That is not enough. Mr. Birchfield would like magic words. I say what Meritor wants is a deus ex machina, or a Hail Mary in football terms. And he wants to put his magnifying glass on each word and parse each word. But what we have here is a record that by every measure under ordinary contract principles shows that the parties intended lifetime health care. What you're missing is the words for life is what's missing here, and it doesn't say shall continue for life. That's what's missing. It does not say for life. It says shall begin at the time of retirement or termination at 65 and shall continue thereafter. If that is ambiguous, if that is not enough, if that is in tension with these general duration clauses, then I submit it's incumbent upon the court to see what the parties have said and did, what the parties said and did over five decades, and what they said and did, what the company said unilaterally, repeatedly. We have over 100 specific instances of this before ERISA in 1974 and after, before Yardman in 1983 and after. We have an estoppel here, what we invoke as the carbon fuel principle. If you know that everybody thinks these words mean lifetime and the company says they mean lifetime and the company keeps renewing the same language over and over and over again, they are stuck with their admissions. And again, I call them... Gallo rejected that, right? Pardon me? Gallo rejected that argument. Gallo did not address this kind of record. Gallo did not cite the seminal Supreme Court cases which say you have to look at the party's course of conduct. Gallo did not mention that Tackett talked about federal labor policy and course of conduct... But didn't Gallo reject the argument that you need to read the contract in the context of Yardman because that's where the parties were operating? What I'm saying is Yardman has become, in this case, Yardman is a non-entity. These words predated Yardman, they post-dated Yardman. They predated ERISA, they post-dated ERISA. They predated and post-dated the 1997 Golden versus Kelsey Hayes case which held it identical terms without regard to Yardman promised lifetime health care. And the ordinary principles of contract language don't permit this after-the-fact prism. A contract is a contract governed by the party's contemporaneous intentions. Later changes in the law are immaterial. Promisor's remorse belatedly arrived at are not rescued by courts. A contract is a contract. I see my time is up. Wait, any questions? Mitch Gilman, do you have any questions? Nothing further now. Thanks. If I may, Your Honor, four quick points. The first is, as to the self-denominated hypothetical example of what will happen to a retiree if the agreement is continued and if the benefit caps are continued in place, Gallo specifically stated about that, about such a situation, quote, that a company to its credit hopes to subsidize health care benefits for its retirees for as long as possible does not mean it has promised to do so. That's at page 274 of 813F third. Second point, as Judge Gilman points out, the lifetime language relating to pensions is not in the collective bargaining agreement, it is in the pension plan. The collective bargaining agreement sets the funding rate for pensions here as it does in most collective bargaining agreements, but the guarantee of lifetime benefits occurs in the pension plan. And I referred that to you in my opening argument. It says lifetime, there's no corresponding language here for health benefits. Third point, as Mr. Israel concedes, the retirees were moved to a preferred provider organization, a managed care plan, in 1997. And both the Reese cases, Reese 1 at 574F third, page 325, and Reese 2, 694F third at 684, indicate that the move to managed care is in fact a material change because it restricts the options available to the retirees and therefore significantly alters their coverage. So that was a big deal. Fourth point, on carbon fuel, carbon fuel actually undermines the argument the plaintiffs are trying to make. In the last paragraph of Justice Douglas' decision in carbon fuel, he points out that the lower court's decision was at odds with two other circuit court decisions that had interpreted the contractual language in a different way. Here, this circuit, which he contends should govern this contract, had the yard man rule, which was followed by no other circuit. These contracts cover plants in at least one other circuit, the seventh circuit. So for him to say that carbon fuel helps him here, it doesn't. Because there's contradictory rulings on the issue of vesting of benefits in the seventh circuit that did not agree with the rulings that he's relying on from the sixth circuit. So where you end up with on carbon fuel is exactly as Judge White noted. Gallo rejected that argument on the basis that you have to apply the law in effect at the time this panel makes its decision. And that law is the Tackett law. That law is to look at the wording of the contract, review it under ordinary contract principles as set forth in Tackett, and to conclude that the contract is unambiguous, and that you don't go to extrinsic evidence, and that reversal is required because the contract does not grant vested benefits. Let me take... Let me ask you a question real quick right at that point. I guess what is bothering me a lot is, all right, if the contract is unambiguous and Meritor never thought that these benefits or retiree health care were vested, why is there all this avalanche of extrinsic evidence that shows company officials promising lifetime benefits? Well, Your Honor, let me address the extrinsic evidence that the plaintiff points to. The first bit of evidence that he points to is the SPD, the summary plan description. And the summary plan description actually undermines their position. At appendix page 3083, it says, all coverages described in this book will automatically end upon discontinuance of the bargaining agreement on September 30, 2003. It also goes on to say to reserve the right for the company to terminate at any time. The prescription cards that say for life on the front of them, flip them over at appendix page 3183. It says that the prescription coverage is made available under the national agreement with the UAW, which, as we've indicated, does not provide vested coverage. The letters that he refers to regarding Meritor's assumption of coverage from Rockwell, all that does is say that Meritor is going to pick up where Rockwell left off. It doesn't expand the coverage. It doesn't grant new coverage. It just says that Meritor is going to live up to the contractual obligations already there. The other extrinsic evidence I don't have time to address, but it's all subject to the integration clause, and we contend it's subject to the rule that you do not turn to that evidence unless the contract is ambiguous and this contract is not. Unless there are any other questions, I see my time has expired. Judge Gilman, I hope I've answered your question. Thank you. Thank you. Thank you both. Thank you, Your Honor. We appreciate your coming down to do this in person. Always a pleasure.